Filed 5/20/26  County of Sonoma v. Kelly CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| COUNTY OF SONOMA,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>THOMAS P. KELLY III,<br><br>        Defendant and Appellant,<br><br>MELISSA ANN JONES,<br><br>        Respondent. | A173236<br><br>(Sonoma County<br>Super. Ct. No. SFL-087881)<br><br>**ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>   [NO CHANGE IN JUDGMENT]** |

**THE COURT\*:**

It is ordered that the opinion filed herein on April 30, 2026, be modified as follows:

1.     On page 9, immediately above the "Disposition" section, the following paragraph should be added:

> Nothing in this opinion is intended to prevent the parties from entering into a new or amended settlement as to these issues.

There is no change in the judgment.

Respondent's petition for rehearing is denied.

---

\* Tucher, P. J., Petrou, J., and Rodríguez, J. participated in the decision.

1

Dated: 5/20/2026          Tucher, P. J.
                            Presiding Justice


A173236 / *County of Sonoma v. Kelly*

Filed 4/30/26  County of Sonoma v. Kelly CA1/3 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| COUNTY OF SONOMA,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>THOMAS P. KELLY III,<br><br>        Defendant and Appellant,<br><br>MELISSA ANN JONES,<br><br>        Respondent. | A173236<br><br>(Sonoma County<br>Super. Ct. No. SFL-087881) |

Thomas P. Kelly and the mother of his minor child, Melissa Ann Jones, entered into a settlement agreement to resolve ongoing disputes regarding the minor's medical care.  That agreement limited Kelly's responsibility for future medical care to care prescribed by a "medical doctor."

The parties subsequently disputed whether the minor's longtime pediatrician, who holds a Doctor of Osteopathy degree, qualified as a "medical doctor."  The trial court struck that provision from the parties' settlement on the basis that there was no meeting of the minds as to their financial responsibility for future medical care.

On appeal, Kelly contends the trial court erred in striking the provision and instead should have interpreted the phrase "medical doctor" as only applying to physicians with an "M.D." degree.  We conclude the trial court

1

properly found there was no mutual assent to form an enforceable agreement on this issue, but remand to the trial court to determine in the first instance whether any portion of the parties' settlement agreement is severable from the disputed provision and remains enforceable.

## BACKGROUND

In 2021, the superior court entered judgment on the parties' stipulation governing parental obligations and support. In relevant part, each parent agreed to pay one-half of the minor's "reasonable uninsured health-care costs."

In 2024, the Sonoma County Department of Child Support Services initiated proceedings against Kelly concerning child support and tuition. Following an initial hearing, the court modified the monthly support amount and scheduled an extended hearing to address reimbursement issues, including uninsured medical expenses.

At that subsequent hearing, the parties placed a settlement agreement on the record. As relevant here, Jones's counsel stated that Kelly would advance his share of the minor's healthcare costs, and "[t]he parties agree that there will not be any treatment provided for [the minor] that is not done . . . without prescription from a doctor, one of his treating physicians." Kelly's counsel clarified that Kelly would not be responsible for any treatment "not prescribed by a medical doctor," citing concern about providers on the minor's treatment team who were not medical doctors. Kelly's counsel stated the parties intentionally used the term "medical doctor" rather than "physician," and Jones's counsel agreed.

The court entered an order reflecting the agreement. It provided in relevant part, "Any/all future uninsured health care expenses for the minor child shall be paid equally by Mother and Father. Uninsured health care

2

expenses shall include those prescribed by the minor child's doctor(s).  Any/all such expenses that can be paid by each parent directly to the provider, shall be paid by each parent directly to the provider . . . ."  The order also included the disputed limitation: "Father will not be financially responsible for any medical care that is without a prescription from a medical doctor."

A dispute soon arose over the scope of that limitation.  Kelly took the position that he was not obligated to contribute to any medical expenses arising from treatment by a doctor of osteopathy rather than a doctor of medicine.  Kelly argued the parties entered into an enforceable settlement agreement that limited his responsibility to care prescribed by an "M.D." and that the expenses at issue stemmed from referrals by a doctor of osteopathy.

Jones disagreed.  She explained the minor's primary care physician—a pediatrician—holds a Doctor of Osteopathic Medicine degree and has treated the child for approximately seven years.  That physician provides routine care for the minor, prescribes medication, and coordinates referrals for specialized services, including occupational therapy, physical therapy, hippotherapy, and neuropsychological testing.  Jones maintained she understood the agreement to encompass those treatments prescribed by the minor's pediatrician, and she would not have agreed to any provision excluding them.

At the subsequent hearing, the parties disputed whether a doctor of osteopathy was included in their prior agreement regarding medical expenses.  Jones emphasized the central role of the pediatrician in the minor's medical care and Kelly's prior acceptance of treatment referrals from that provider.  Kelly, in contrast, asserted the pediatrician had historically referred the minor for non-medical treatments, such as reiki-type treatments and horseback riding lessons.  He argued "the osteopath will refer to

3

anything," and the agreement excluded his financial responsibility for any treatment prescribed by a doctor of osteopathy.

Following the hearing, the court found the parties lacked a meeting of the minds as to the provision limiting Kelly's financial responsibility to care prescribed by a "medical doctor." The court struck that portion of its prior order, and only that portion, without prejudice.

DISCUSSION

Kelly asserts the court erred in striking the provision limiting his financial responsibility for medical care. Specifically, Kelly contends the parties' settlement agreement was enforceable and its terms were not ambiguous.

## I. Mutual Consent

Kelly contends the trial court misconstrued the parties' testimony as demonstrating a lack of mutual assent. In his view, that testimony constituted parol evidence that should have been used to interpret an ambiguous term. The argument fails because it assumes the existence of a contract the record does not establish.

"A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts." (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 810 (*Weddington*).) A foundational requirement is mutual consent. (*Id.* at p. 811.) In other words, the parties must ' "all agree upon the same thing in the same sense.' " (*Ibid.*) Thus, a valid settlement agreement requires a "meeting of the minds" on all material terms. (*Id.* at p. 797.) Whether such assent exists is determined objectively—by outward manifestations, not undisclosed intent. (*Id.* at p. 811.) On a motion to enforce a settlement, the trial court's factual findings must be affirmed if supported by substantial evidence. (*Id.* at p. 815.)

4

Measured against these principles, the record supports the trial court's conclusion that the parties did not mutually consent to the term at issue. The dispute does not arise from a mere ambiguity in phrasing; it reflects a fundamental disagreement over a material term—whether father would share the cost of the minor's primary care physician, a pediatrician with a Doctor of Osteopathy degree.

At the time of the settlement agreement, the pediatrician had treated the minor for approximately seven years and functioned as his primary care provider. She delivered routine medical care, prescribed medication, and coordinated referrals for specialized services, including occupational therapy, physical therapy, hippotherapy, and neuropsychological testing. In practical terms, she was central to all aspects of the minor's medical care.

The parties' negotiations confirm the absence of agreement on this point. Kelly expressed concern about being financially responsible for providers who were not "medical doctors," referencing unspecified members of the minor's broader treatment team. But Kelly never indicated that he sought to exclude the pediatrician who served as the minor's primary physician. Nor did he specify that a "medical doctor" would only encompass those doctors with an "M.D." degree. By contrast, Jones testified unequivocally that she would not have agreed to any arrangement relieving Kelly of responsibility for the pediatrician's care. Her understanding was that Kelly would continue to be equally responsible for the pediatrician's services.[1]

---

[1] Kelly asserts the trial court erred in allowing testimony at the parties' hearing. However, Kelly failed to raise any objection during the hearing to such testimony, and his argument is thus waived. (Evid. Code, § 353, subd. (a); *Platzer v. Mammoth Mountain Ski Area* (2002) 104 Cal.App.4th 1253, 1260 [failure to object to inadmissible evidence waives the defect]; *Bardessono v. Michels* (1970) 3 Cal.3d 780, 794 [failure to object to the form of

This divergence is not semantic; it goes to the core allocation of medical expenses. Where one party understands a central provider to be included and the other later claims that provider is categorically excluded, there is no agreement "upon the same thing in the same sense." (*Weddington*, *supra*, 60 Cal.App.4th at p. 811.) The trial court properly treated this as a failure of contract formation, not an ambiguity susceptible to interpretation.

The authorities cited by Kelly do not compel a different result because they address a different problem—interpretation or supplementation of terms within an otherwise valid contract—not the threshold question of whether mutual assent existed. *Weddington*, *supra*, 60 Cal.App.4th 793, for example, involved the improper insertion of a material term by a private judge. (*Id.* at p. 818.) Similarly, *In re Marriage of Iberti* (1997) 55 Cal.App.4th 1434 concerned whether qualifying language could be added to an unambiguous provision governing spousal support. (*Id.* at pp. 1438, 1440–1442.) And *Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co.* (1968) 69 Cal.2d 33, 37 and *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165 solely addressed the use of extrinsic evidence to interpret an ambiguous contract term; they did not address whether the parties ever reached agreement on a material term in the first instance. None of these cases resolved the threshold question here—whether there was a meeting of the minds.

The only case cited by Kelly that squarely addressed mutual assent, *Bowers v. Raymond J. Lucia Companies, Inc.* (2012) 206 Cal.App.4th 724 (*Bowers*), underscores why his position fails. In *Bowers*, the court addressed whether the parties agreed to settle their dispute through binding mediation.

---

evidence is ordinarily deemed a waiver of such objection].) Moreover, Kelly does not identify any prejudice resulting from the court's admission of such testimony. (See *Lewis v. City of Benicia* (2014) 224 Cal.App.4th 1519, 1538.)

In evaluating whether mutual assent was present, the court examined the record for objective manifestations of agreement and found them. (*Id.* at pp. 732–733.) Namely, the court noted the parties' statements on the record agreeing to binding mediation, the absence of any reference to a different procedure, the fact the parties were already in the midst of a lengthy arbitration, and the defendant's failure to raise the issue in postmediation correspondence with the mediator. (*Id.* at pp. 733–734.) Accordingly, the court found the parties mutually agreed to allow the mediator to impose a binding resolution. (*Id.* at p. 734.)

No comparable evidence exists here. The record contains no manifestation of assent to exclude the minor's pediatrician from shared medical expenses. While Kelly expressed concern about horseback riding as a medical treatment, nothing in the record indicates this concern extended more generally to the care provided by the minor's pediatrician. Nor does the record support his post hoc attempt to equate "medical doctor" with "M.D." To the contrary, Kelly's insistence on that interpretation highlights the absence of a shared understanding at the time of contracting.

In sum, this is not a case of ambiguous language requiring interpretation. It is a case in which the parties never agreed on a material term. Without evidence that both parties assented to the same obligation regarding core medical expenses of the minor—i.e., his long-standing pediatrician—there is no mutual consent and no enforceable agreement. (*Bowers*, *supra*, 206 Cal.App.4th at p. 733 [" 'If there is no evidence establishing a manifestation of assent to the "same thing" by both parties, then there is no mutual consent to contract and no contract formation.' "].)

## II. Severability

Although the trial court properly struck the challenged provision, the trial court does not appear to have considered whether that provision is severable from the remaining settlement agreement, either in its entirety or in part.

Unenforceable portions of a contract may be severed from an otherwise valid contract, but only where the agreement is divisible. "It is settled that where a contract has both void and valid provisions, a court may sever the void provision and enforce the remainder of the contract. [Citations.] California cases take a very liberal view of severability, enforcing valid parts of an apparently indivisible contract where the interests of justice or the policy of the law would be furthered." (*Adair v Stockton Unified School Dist.* (2008) 162 Cal.App.4th 1436, 1450; see *Reid v. Landon* (1958) 166 Cal.App.2d 476, 485 ["Whether a contract is susceptible of division depends on its terms, the language employed, the subject matter covered, the nature and purpose of the agreement, its relation to other documents in the transaction and the intention of the parties as reflected in its terms."].)

Here, the settlement reflects three principal objectives: (1) resolution of outstanding child support and arrears; (2) agreements governing the method, timing, and substance of parental communications regarding the minor's medical care, insurance, and expenses; and (3) allocation of financial responsibility for the minor's future medical expenses. Arguably, the first two objectives were not necessarily affected by the absence of mutual assent regarding what constitutes a "medical doctor." However, Kelly stated the issue of medical reimbursement "was part of a global settlement of all the issues." Kelly testified that his intent "was to have a clear, robust understanding of what I would be financially responsible for, and what I

8

would not be responsible for," and he dropped his motion for reconsideration of the child support modification based on his understanding of the parties' settlement.

Based on the foregoing, we remand to the trial court to determine in the first instance whether the remaining provisions are analytically and functionally distinct such that they may be enforced without reference to the invalid portion.

## DISPOSITION

The section of the March 28, 2025 order striking the phrase, "Father will not be financially responsible for any medical care that is without a prescription from a medical doctor," is vacated without prejudice. The matter is remanded to the trial court to determine whether any portion of the parties' settlement is severable from this provision and remains enforceable, or whether the entire settlement agreement must be stricken. In all other respects the order is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3), (5).)[2]

---

[2] On January 20, 2026, Jones filed a motion to dismiss the appeal. On January 26, 2026, Jones filed a motion for sanctions related to this appeal. Kelly opposed both motions. The court deferred ruling on these motions until consideration of the merits. We now deny both motions.

PETROU, J.

WE CONCUR:

TUCHER, P. J.

RODRÍGUEZ, J.

A173236 / *County of Sonoma v. Kelly*

10